UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| YOGURTLAND FRANCHISING, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAMANJIT BRAR, an individual,<br><br>Defendant. | Case No. 8:22-cv-00508-SB-PLA<br><br>Hon. Stanley Blumenfeld, Jr.<br>Courtroom 6C<br><br>**ORDER REOPENING ACTION AND ENTERING CONSENT JUDGMENT** |

1 | Pursuant to the stipulation between Plaintiff Yogurtland Franchising, Inc. and Defendant Ramanjit Brar (collectively, the "Parties"), and good cause appearing therefor, it is hereby ordered that this matter be reopened for the limited purpose of entering the Parties' consent judgment for the entry of a permanent injunction.

It is hereby stipulated and agreed that the Court may enter the following consent judgment pursuant to Rule 54 of the Federal Rules of Civil Procedure.

This Consent Judgment is entered into with reference to the following agreed Statement of Facts:

## I. STATEMENT OF FACTS

1. This action was commenced by Plaintiff on March 29, 2022 by the filing of the Summons and Complaint in the United States District Court for the Central District of California, entitled, *Yogurtland Franchising, Inc. v. Ramanjit Brar.*, Case No. 8:22-cv-00508-SB-PLA ("Action), asserting claims against Defendant for, among other things, federal trademark infringement and false designation of origin (15 U.S.C. §§ 1114(1), 1125(a)), common law trademark infringement and common law unfair competition, unfair competition in violation of California Business & Professions Code § 17200, and breach of contract (the "Claims").

2. Defendant was served with the Summons and Complaint in this Action and has filed an Answer.

3. To avoid further litigation and to resolve this Action, Plaintiff and Defendant recently entered into a Settlement and Mutual Release Agreement ("Settlement Agreement"), the terms of which are confidential and set forth in a separately executed document, but the following terms of which the Parties may disclose for purposes of this Stipulation:

    a. Defendant agreed to pay Plaintiff the total amount of $500,000 as damages for Plaintiff's Claims;

1

    b. Plaintiff agreed that if Defendant timely made two installment payments of $25,000 and $30,000, respectively, Plaintiff would forgive the remaining balance of $445,000 as a discount for the timely payment. However, as a material condition of the Settlement Agreement, the Parties agreed that if there is an uncured default by Defendant on either of these two installment payments, then Plaintiff would have the right to have this Consent Judgment entered in the Action, without further notice;

    c. All payments that Plaintiff received from Defendant prior to default will be applied to reduce the $500,000 in damages in this Consent Judgment;

    d. The amount of this Consent Judgment shall be increased by the amount of any reasonable attorneys' fees and costs incurred to have the Consent Judgment entered by the Court;

    e. The Parties expressly represented and warranted that they intend that the holding of *Jade Fashion & Co., Inc. v. Harkham Industries, Inc*., 229 Cal. App. 4th 635 (2014), shall apply to their intent in entering into the Settlement Agreement and this Stipulated Consent Judgment, and that the enforcement of the terms and conditions of the Settlement Agreement, including, but not limited to, this Stipulation, entry of the Consent Judgment based upon this Stipulation, and the execution of the Consent Judgment, shall not constitute (nor are intended and/or shall be deemed to result in) a prohibited penalty or forfeiture pursuant to Cal. Civil Code section 1671. See also *In Re Premier Golf Properties, LP*, 564 B.R. 660, 700 (Bankr. S.D. Cal. 2016) (applying *Jade Fashion* );

    f. Defendant covenanted not to assert any claim or defense in this Action or otherwise that the Settlement Agreement, this Stipulation,

the Consent Judgment entered thereupon, or Plaintiff's execution on the Consent Judgment as provided under the Settlement Agreement are invalid or unenforceable in any way and Defendant hereby expressly waives all such defenses;

g. A permanent injunction shall be issued against Defendant and the terms of the injunction set forth below are reasonable;

h. This Consent Judgment correctly sets forth the amounts the Court is authorized to award to Plaintiff, and against Defendant, and the agreed-upon terms of the permanent injunction; and

i. This Consent Judgment may be entered upon declaration of Plaintiff, under oath, setting forth the fact of default under the terms of the Settlement Agreement, the expiration of the time to cure, as well as the amount of payments made by Defendant through the date of default.

4. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1338 because this dispute concerns the rights of the parties under the Lanham Act, 15 U.S.C. § 1051, *et seq*.

5. Supplemental jurisdiction over the state law claims is vested in this Court under 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendant.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

8. Plaintiff owns various trademarks, tradenames, service marks, logos, and derivations thereof, including following marks that have been registered on the Principal Register of the United States Patent and Trademark Office (the "Yogurtland Marks"):

| | |
|---|---|
| YOGURTLAND | Registration No. 3170144 |
| service mark | Registered November 7, 2006 |
| YOGURTLAND | Registration No. 3883756 |

3

| | |
|---|---|
| trademark & service mark | Registered November 30, 2010 |
| Y | Registration No. 3887297 |
| trademark & service mark | Registered December 7, 2010 |
| HOLSOM BY YOGURTLAND service mark | Registration No. 6279075 Registered February 23, 2021 |

9. The foregoing registrations are in full force and effect and cover the goods and services identified on the registration certificates.

10. Plaintiff has continuously used each of the Yogurtland Marks since the date of their registration and these marks are valid, subsisting, and some are now incontestable under the Lanham Act, 15 U.S.C. § 1065.

11. Plaintiff licenses the right to use the Yogurtland Marks to franchisees for use as part of their businesses.

12. As a result of Plaintiff's widespread, continuous, and exclusive use of the Yogurtland Marks to identify Plaintiff's goods and services, and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the Yogurtland Marks.

13. Plaintiff's Yogurtland Marks are distinctive to both the consuming public and Plaintiff's trade.

14. As a result of Plaintiff's expenditures and efforts, the Yogurtland Marks have come to signify the high quality of the goods and services designated by the Yogurtland Marks, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiff.

15. Defendant is a party to a franchise agreement dated January 17, 2014 with Plaintiff (the "Franchise Agreement") to operate a Yogurtland® restaurant located at 42250-C Jackson Street, Indio, California 92203 (the "Store").

16. On or about July 1, 2020, Plaintiff informed Defendant that he was in breach of several provisions of the Franchise Agreement, including the failure to

1  pay outstanding royalty and marketing fees.  Several months later, on February 15, 2021 and June 30, 2021, Plaintiff sent notices of default to the Defendant advising of his continued breaches of the Franchise Agreement—and ultimately terminated the Franchise Agreement with the Defendant.

17. After termination, the Defendant has refused to comply with his post-termination obligations under the Franchise Agreement.  For example, without any authority or consent, the Defendant has refused to completely de-identify the Store by removing Plaintiff's trademarks and service marks, as required under the Franchise Agreement.

18. By virtue of the forgoing, Defendant is in material breach of the Franchise Agreement.

19. As a proximate result of Defendant's contractual breaches, Plaintiff has suffered loss, damage and injury, including but not limited to, unpaid royalties and marketing fees, and a loss of future revenue from these recurring fees over the remainder of the term of the Franchise Agreement.

20. Despite termination of Defendant's license to use the Yogurtland Marks, Defendant continued to use the Yogurtland Marks in U.S. commerce, without Plaintiff's authorization, in order to induce the public to patronize his location.

21. Defendant's unauthorized use of the Yogurtland Marks constitutes a "use in commerce" under the Lanham Act.

22. Defendant's acts have caused and are likely to continue to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of Defendant's goods and services, and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendant's goods and services originate from, are associated or affiliated with, or are otherwise authorized by Plaintiff.

23. The foregoing alleged conduct by Defendant constitutes trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), trademark infringement and unfair competition under the common law of the State of California, and violation of California Business & Professions Code § 17200.

24. As a direct and proximate result of the Defendant's infringing conduct alleged herein, Plaintiff has sustained substantial, immediate, and irreparable harm, loss, damage, and injury, and is entitled to an injunction pursuant to 15 U.S.C. §§ 1116-1117.

25. The public interest is served by an injunction because it will help protect against future consumer confusion and deception.

26. The Parties have agreed to the issuance of a permanent injunction and that the terms of the injunction set forth below are reasonable.

WHEREFORE, upon the consent and request of the Parties, and good cause appearing, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT** judgment is entered in favor of Plaintiff and against Defendant on all of the counts in Plaintiff's Complaint, as follows:

## PERMANENT INJUNCTION

27. Defendant, together with all of Defendant's officers, agents, servants, employees, representatives, and assigns, and all other persons, firms, or companies in active concert or participation with Defendant who receive actual notice of this order, are hereby enjoined and restrained from directly or indirectly:

   a. using any reproduction, counterfeit, copy, or colorable imitation of the Yogurtland Marks to identify any goods or the rendering of any services not authorized by Plaintiff;

    b. engaging in any course of conduct likely to cause confusion, deception or mistake, or injure Plaintiff's business reputation or weaken the distinctive quality of the Yogurtland Marks;

    c. further infringing the Yogurtland Marks by distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any products or services not authorized by Plaintiff bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the Yogurtland Marks;

    d. using any simulation, reproduction, counterfeit, copy or colorable imitation of the Yogurtland Marks in connection with the promotion, advertisement, display, sale, offering for sale, circulation or distribution of any unauthorized products or services in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiff, or to any goods sold, manufactured, sponsored or approved by, or connected with Plaintiff;

    e. making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any services provided, or any products manufactured, distributed, sold or offered for sale, by Defendant are in any way associated or connected with Plaintiff, or is provided, sold, manufactured, licensed, sponsored, approved or authorized by Plaintiff;

    f. engaging in any conduct constituting an infringement of any of the Yogurtland Marks, of Plaintiff's rights in, or to use or to exploit, said trademarks, or constituting any weakening of Plaintiff's name, reputation or goodwill;

      g. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (f); and

      h. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by subparagraphs (a) through (f).

28. This permanent injunction shall remain in full force and effect unless and until modified by order of this Court.

## ADDITIONAL PROVISIONS

29. This Consent Judgment and Permanent Injunction constitutes a final judgment on the merits of Plaintiff's claims for purposes of res judicata, collateral estoppel, issue preclusion, and claim preclusion.

30. Defendant waives any and all right to an appeal from this Consent Judgment and Permanent Injunction.

31. This Consent Judgment and Permanent Injunction shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, successors, assigns, and acquiring companies.

32. If Defendant is found by the Court to be in contempt of, or otherwise to have violated this Consent Judgment and Permanent Injunction, the Parties agree that Plaintiff shall be entitled to all available relief which it may otherwise request from the Court, including sanctions for contempt, damages, injunctive relief, attorneys' fees, costs, and any other relief deemed proper in the event of such violation.

33. The Court retains jurisdiction of this matter for the purposes of enforcing the terms of this Consent Judgment and Permanent Injunction.

34. Each party shall bear its own attorneys' fees and costs in connection with this Action, except to the extent of any enforcement of the Settlement Agreement or this Consent Judgment and Permanent Injunction.

35. The Court expressly finds, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay in entering this Consent Judgment, and expressly directs entry of such judgments.

**IT IS SO ORDERED.**

Dated: July 29, 2022

_____
The Honorable Stanley Blumenfeld Jr.
United States District Judge